## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

In re

**MARTIN RAYMOND JOHNSON**,

Debtor.

Case No.  **15-60227-13**

# MEMORANDUM OF DECISION

At Butte in said District this 25th day of April, 2016.

After due notice, the Court held a second evidentiary hearing at Missoula on March 10, 2016, on Debtor's Objection (Document No. 70) to amended Proof of Claim No. 2 filed by Greg Moran ("Greg") and Rachelle Moran ("Rachelle") (together "Morans").  Morans each appeared at the hearing pro se; Greg testified.  Debtor Martin Raymond Johnson ("Johnson" or "Debtor") appeared and testified, represented by attorney Andrew W. Pierce of Missoula.  Isaac Fritz, Shawn Christensen, Robert Stuckey, Josh Green and Marty Johnson also testified.  Exhibits 1, 2, 3 and 4 attached to Morans' amended Proof of Claim No. 2 were admitted into evidence.  After the parties completed their cases-in-chief the Court heard oral argument from the parties, after which it took the Debtor's Objection under advisement.  After review of the Debtor's Objection, Morans' amended Proof of Claim No. 2 and the record, the Court sustains Debtor's Objection. The Court allows Morans' amended Proof of Claim No. 2 as an unsecured, nonpriority claim in the net amount of $260.44 after deducting the amount of Johnson's work invoice on Morans' cabin, in accordance with the parties' unwritten agreement.

This Court has exclusive jurisdiction of this Chapter 13 bankruptcy case under 28 U.S.C.

1

§ 1334(a). Allowance or disallowance of Morans' claim is a core proceeding under 28 U.S.C. § 157(b)(2)(b).

## FACTS

The background facts mostly are not in dispute[1] and are set forth in this Court's prior Memorandum of Decision (Doc. 66), which sustained Debtor's objection to Morans' original Proof of Claim No. 2, but granted Morans leave to file an amended claim with documents showing the basis of their claim. Morans filed amended Proof of Claim 2 on January 20, 2016, attached to which are invoices for vehicle repairs which Greg's business performed for Johnson;[2] invoices from Great Northern Tile Co. ("Great Northern Tile") for repairing Johnson's work and performing additional remodeling work at Morans' cabin located on Georgetown Lake; and documents from a lawsuit Morans initiated against Johnson in the Montana Fourth Judicial District Court, No. DV-13-1030. Morans' amended Proof of Claim 2 asserts an unsecured, nonpriority claim in the amount of $11,942.76. They checked the box "No" at item 11 where they were asked if their claim is subject to a right of setoff.

Johnson has been self-employed in construction since 1985. He does tile and carpentry work out of Seeley Lake, Montana. He owned and operated Marty Johnson, LLC, until it was dissolved in 2010.

Robert Stuckey ("Stuckey") is an independent contractor with thirty years experience in carpentry and remodeling. Stuckey testified that he has known Johnson for twenty years, that

---

[1] The quality of Johnson's tile, wood and other remodeling work at Johnson's cabin on Georgetown Lake is disputed.

[2] Debtor does not dispute the amount or value of vehicle repairs performed for him by Greg's business.

2

Johnson's reputation in the construction industry is "good, really good," and that in Stuckey's opinion the quality of Johnson's work is "as good as anyone's."  Stuckey worked as a subcontractor for Johnson during the remodel of Morans' cabin.

Josh Green is a self-employed subcontractor with more than fifteen years experience, who works on flooring and showers under the name Green Flooring.  Green testified that he has been familiar with Johnson for fifteen years and has done subcontracting work for Johnson involving showers and hardwood.[3]  In Green's opinion, Johnson's work is of high quality.

Morans own an auto repair shop in Missoula and a cabin on Georgetown Lake.  Johnson testified that he and Greg were friends. In approximately 2007, they worked out a barter/trade agreement to exchange Greg's work on Johnson's vehicles[4] for Johnson's carpentry services at Morans' cabin.  Morans kept track of Johnson's vehicle repair bills; the parties agreed that Johnson would get credit for his carpentry services.  Johnson testified that most of the amount owed to Morans for vehicle repairs was owed by his LLC.

A dispute arose between the parties regarding Johnson's work at Morans' cabin.  Greg testified that Johnson's work was incomplete, that Johnson installed the wrong wood and other materials and that Johnson failed to construct proper structural support for a wall in the master bathroom.  Johnson testified that he could have cured the problems complained of by Morans, but that before he could finish Morans ordered him off their property and to stay away.  Morans sued Johnson in  state court.  That lawsuit was stayed by the filing of Johnson's bankruptcy case.

---

[3] Green did not perform any subcontracting work at Morans' cabin.

[4] Stuckey testified that Morans also performed vehicle repair work for Stuckey, which was billed to Johnson.

3

Johnson filed a voluntary Chapter 13 petition on March 26, 2015, with his Schedules and Statements in which Morans are listed as a creditor.  Morans filed Proof of Claim No. 2 on April 20, 2015, asserting a claim in the amount of $11,942.76, the basis for which is stated "carpentry services performed."  Debtor filed an objection, which this Court sustained after hearing.  The Court allowed Morans to file an amended proof of claim with appropriate documentation.

Morans filed amended Proof of Claim 2 on January 20, 2016, asserting an unsecured nonpriority claim in the amount of $11,942.76.[5]  Debtor filed an objection on January 29, 2016, contending that, as a result of his flooring and carpentry work on Morans' cabin, he owes them nothing.

The agreement between Johnson and Morans to exchange Johnson's work on their cabin for vehicle repairs is unwritten.  Other than the basic barter arrangement, the parties do not agree on material details of the agreement.  In response to questions from the Court, Greg testified that he initially agreed to offset his bill for vehicle repairs[6] with Johnson's work on their cabin. Johnson testified that he paid Greg in cash for a new engine and a few other repairs, but otherwise Johnson paid his bill to Morans with work at their cabin.

Johnson performed work at Morans' cabin through his company Marty Johnson, LLC; and he testified that most of Morans' claim is for vehicle work for Johnson's company vehicles. He testified that he worked on Morans' cabin over a period of a few years, in between working at his other contracting jobs, when he had access to the cabin.  He testified that he gave Greg

---

[5] Greg testified that they actually spent more than $25,000 to finish their cabin project, but they reduced their claim to get it under $12,000.

[6] Johnson testified that he never saw invoices from Greg for vehicle repairs until after Morans sued him.

progress invoices for the project.

From the testimony and photographs admitted into evidence, it appears that Johnson's work on Morans' cabin included installing tile and a shower enclosure in the spare bathroom; tile, a tub enclosure, shower pan and a "stub wall" or "knee wall" in the master bathroom; oak flooring in the kitchen and flooring and wood trim in the spare bedroom. Stuckey testified that he did some of the work at Moran's cabin for Johnson, including "maybe" the knee wall,[7] and laid backerboard for the bathtub.

The parties agree that each room worked on was to have a border. Johnson testified that Greg had seen border work which Johnson had installed in Johnson's own home, and that Greg liked it and asked Johnson to install something similar for Morans' cabin. Morans wanted something different for each room. Johnson had leftover wood from other projects.

Greg testified that the floor work was to have a pattern, which they discussed with Johnson. Morans laid tape on the floor showing where and in what pattern they wanted the tile. Isaac Fritz testified that he was present when Morans laid down the tape. Johnson testified that he altered the angles because the angles taped out by Morans would not have worked out. Johnson believed that he had the discretion to adjust the angles, and he did not see that as a major change. He testified that in his opinion it was better to lay the floor tiles the way he changed it. Asked on cross examination why he did not call

---

[7] Stuckey described how to square a wall and testified that he would have squared the knee wall, but he noted that other walls have to be square at the beginning.

Morans about the change, Johnson answered that he went ahead the way he thought was best and could have adjusted it.

Greg testified that Morans provided Johnson with all of the tile and grout for the work on their cabin and that Johnson supplied no tile or grout but included charges for tile and grout on the invoice he gave to Morans. Johnson billed Morans for hickory flooring, red oak and Brazilian cherry wood. Greg testified that he never agreed to installing oak and cherry wood. Greg testified that they told Johnson in writing to install "Purple Heart" and hickory wood and that they wanted to use their own tile. Johnson testified that Greg told him to install flooring and tile like Johnson had installed in his own home,[8] and that Greg left some of the wood choices up to Johnson's judgment, except that Greg wanted hickory flooring.

Morans became dissatisfied with Johnson's work and that it was not finished. Johnson testified that Greg called him and was "livid," and told Johnson not to come back to the cabin without written permission. Johnson testified that, typically, a contractor is given an opportunity to address a dissatisfied customer's concerns. He testified that the cabin project was between one-quarter to one-third finished, and that most of what Greg was dissatisfied with could have been fixed and that typically a contractor can fix problems in the course of finishing a project. Johnson testified that he never before had an unsatisfied customer and that he had always before been able to resolve any problems,

---

[8] Johnson testified that he put juniper, white oak and maple wood in his own house.

6

but that Morans did not give him the opportunity to fix the problems.

Josh Green corroborated Johnson's testimony about the industry practice for dealing with unsatisfied customers.  Green testified that usually a contractor will discuss a problem with an unsatisfied customer and fix the problem.  Green admitted that the photographs admitted into evidence showed problems and that the project was not complete, but he testified that the problems could have been fixed.

Johnson admitted that Greg asked him to remedy the situation, but Johnson testified that he was not given a chance because Greg ordered him to stay away from Morans' cabin without written permission.  Johnson never went back to finish.  He testified that he was only about one-quarter of the way finished with the project.  The floor in the master bath was complete other than the shower floor, but not the walls. Johnson testified that he could have fixed the problems such as the chipping and bubbling on the floor and the wrong tiles in the bathroom[9] for much less than the amount of his original invoice, but that Greg told him not to come back.

Greg testified that Johnson broke off all communication and Morans had to hire another contractor to repair and finish the work.  When asked if Greg told him he would hire another contractor to finish the job Johnson answered: "No.  He said he'd hire an attorney."  Asked on cross examination about other dissatisfied clients, Johnson admitted that he was involved in a case with Abbey Carpet and had problems getting paid for his

---

[9] Johnson admitted on cross examination that chiseling out the floor tiles possibly could compromise the in-floor heating system.

7

work on a sandwich stand in a parking garage.  Johnson answered "No," however, when asked if anyone relaid a floor he had done.

Morans had the tile and the Brazilian cherry wood and red oak ripped out, which Johnson had installed.  Johnson testified that his woodwork was removed for cosmetic reasons.  Greg testified they had to buy all new materials and hired Great Northern Tile to install new tile and they hired White Tail Custom Homes to tear out or complete the woodwork.

Shawn Christensen, who is owner of Great American Tile, was asked by Morans to look at the work performed by Johnson.  Christensen testified that everything he saw was only about half done.  The master shower and the tub surround in the spare bathroom were not finished, and neither shower was set correctly. Christensen tore out the pans because there was no adhesive between the pan and the drain path.  Johnson testified that he satisfied building code requirements for the shower pan by performing a test with a cork and that both shower pans he installed passed that test.

Christensen also testified that he found placed on the walls two layers of one-quarter inch backerboard instead of a single one-half inch board, with tiles on those walls.[10]  Johnson did not recall whether he put up the backerboard but allowed that others working for him might have.  Johnson testified that it is not customary to layer backerboard, but that he has layered backerboard on other projects when the framing is

---

[10] Stuckey testified on cross examination that he did not install two layers of backerboard in the shower and no reason existed to do so.

uneven and he had to make adjustments.

Christensen testified that they ripped out the stub wall, the shower and tub decks, which Johnson had installed, down to the wall studs and redid them, at a final bill of $8,000.  Christensen testified that the floor of the bathrooms was done, so they left the floor as Johnson had installed it.

Isaac Fritz ("Fritz") owns White Tail Custom Homes.  Morans hired him to finish the kitchen and spare bedroom work begun by Johnson.  Asked about the condition of the woodwork he found, Fritz testified that the kitchen floor was unfinished.  Fritz found gaps between the floor Johnson laid down in front of the dishwasher and cabinet, which had to be refinished.  Johnson testified that he had a few hundred pieces of kitchen flooring remaining to install when Greg ordered him to stay away from their cabin, but that he had laid enough kitchen flooring to install the cabinets.  Fritz testified that the kitchen floor had clearcoat on it but there were "drops" and it was not finished; the dining room island did not have clearcoat.

In the spare bedroom, Fritz testified, there were four different types of wood, and Greg told Fritz that it wasn't what they wanted.  Fritz tore out the oak flooring and cherry in the spare bedroom and relaid the wood floor with a decorative tile border.  Instead of Purple Heart wood, Fritz installed a mahogany.

In addition to tearing out the wood and tile installed by Johnson, Morans had new work done by Great Northern Tile.  Christensen testified that they installed a glass rock

9

wall where they ripped out the stub wall.  The new work was not separately billed.  Greg testified that Great Northern Tile's invoice included about one-quarter to one-third of new work.  Johnson testified that 75 percent (75%) of the work performed by Great Northern Tile was new work rather than repairs to his work, including ceiling work which he had not begun.  Greg clarified that their amended Claim 2 includes only the amount for repairs to Johnson's work, and does not include Fritz's work by White Tail Custom Homes.

Greg testified that Johnson gave him an invoice for Johnson's completed work in the amount of $11,682.32.  Morans' amended Claim 2 includes a copy of Johnson's invoice # 162, dated 5/18/2012.[11]  The difference between the amounts claimed on Morans' amended Proof of Claim No. 2 ($11,942.76) and Johnson's invoice ($11,682.32) is a net claim for Morans in the amount of $260.44.

Greg testified that Johnson's work was substandard and worthless.  Morans object to Johnson's charges for "32 curb bricks."  Greg testified that they tore out the eleven bricks, which Johnson had installed.

Morans disputed Johnson's charges for meals and room rental because he produced no receipts; they disputed his number of hours claimed because they could not verify the number and suspect that Johnson claimed more hours than he actually worked;

---

[11] The invoice is at pages 38, and 46-47 of Ex. D attached to Morans' amended Proof of Claim 2.  It appears to be issued by "Marty Johnson LLC" with an e-mail address of "martyswoodworking@gmail.com."

10

and they dispute a $120 charge for "pick up and delivery of product" because Johnson had offered to take the product to the cabin because he was going there anyway.

Johnson testified that his work on Morans' cabin offset their claim for vehicle repair services. Asked whether he thinks he owes Morans any money Johnson answered: "I really don't."

## DISCUSSION

Debtor argues that the verbal agreement with Morans was not a standard business arrangement and that this was a falling out between friends. Debtor contends that no reason exists why he should not have been allowed to finish and repair the problems which Morans raised, which shows that Morans failed to mitigate their damages, as a prudent person would do, by letting him correct the problems. Debtor argues that Morans did not provide a complete accounting of the repair work because it is combined with new work and that the vehicle repairs were incurred by Johnson's LLC which was dissolved. Greg argued that they tried to get Johnson to come back and make repairs, but he did not respond.

Morans filed their amended Proof of Claim and appeared at the hearing pro se. Courts have a duty to construe pro se pleadings liberally. *Bernhardt v. L.A. Cty*, 339 F.3d 920, 925 (9th Cir. 2003); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Since Morans are pro se, the Court construes their Proof of Claim liberally. However, the court has "no obligation to act as counsel or paralegal to pro se litigants." *Pliler v.*

*Ford*, 542 U.S. 225, 231 (2004); *see also Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)

("courts should not have to serve as advocates for pro se litigants").

      The law on objections and allowance of claims is well settled in the Ninth Circuit

and this Court. This Court discussed the applicable law governing the burden of proof for

allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont.

2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):

>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). *See also* Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

>> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consol. Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

* * * *

"If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Found.*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Applying this analysis to the instant Debtor's Objection to Morans' amended Proof of Claim No. 2, the Court observes that Morans presented evidence of Greg and the workers, which he hired to rip out and reinstall wood and tile in their kitchen, bathrooms, and rooms. Morans' amended Proof of Claim No. 2 includes not only the invoices from Morans' replacement contractors, but also Johnson's invoice, all of which were admitted into evidence. For his part, Johnson offered his own testimony and testimony of craftsmen who testified that Johnson's

reputation and that of his work is as good as anyone's, and in addition they testified that it is commonplace for contractors to be given a chance to remedy problems complained of by dissatisfied customers.  Greg did not give Johnson the chance to fix the problems before Greg ordered Johnson to stay away from the cabin without written permission.

Based on the parties' undisputed verbal agreement to exchange vehicle repairs for Johnson's contracting work, the Court finds that Morans satisfied their burden of proof for the validity and amount of their claim, subject, however, to reduction by the amount of Johnson's invoice which is included in the attachments to amended Proof of Claim 2.

"Debt" means liability on a claim.  11 U.S.C. § 101(12).  "Claim" is defined broadly and means (A) "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment . . . ."  11 U.S.C. § 101(5); *Torgenrud v. Missoula Fed. Credit Union (In re Reinertson)*, 17 Mont. B.R. 21, 29 (Bankr. D. Mont. 1998), citing *Matter of Southmark Corp.*, 88 F.3d 311, 317 (9th Cir. 1996).

The Debtor does not dispute that Greg provided his business with vehicle repairs which he agreed to pay for with work at Morans' cabin.  The essential elements of a contract of identifiable parties capable of contracting, their consent, a lawful object and a sufficient cause or consideration, enumerated at MONTANA CODE ANNOTATED ("MCA")

14

§ 28-2-102 are shown by the evidence and are not disputed by the parties.

"All contracts may be oral except such as are specially required by statute to be in writing."  MCA § 28-2-901.  *In re Estate of Bolinger*, 1998 MT 303, ¶ 46, 292 Mont. 97, 108, 695 P.2d 1313, citing *Bishop v. Hendrickson* (1985), 215 Mont. 158, 695 P.2d 1313 (1985).  Although it appears from the evidence that Johnson's work at Morans' cabin extended over one year, the parties do not contend that the statute of frauds found at MCA § 28-2-903(1)(a) applies.  Thus, the Court finds that the parties had an oral contract for vehicle repairs by Greg in exchange for Johnson's work at their cabin.

However, the parties dispute certain details of the oral agreement, as a result of which this Court deems the disputes are not part of the oral agreement.  Morans complain about Johnson's use of wood such as oak and cherry and his alteration of the angles for the trim work, which they taped out.  Johnson testified that he had wood left over from other jobs and that he felt he had some discretion to use his wood, except that Greg specified that he wanted hickory.  Johnson believed that he had the discretion to alter the trim angles because he believed in his professional judgment that what Morans taped out would not work.  Johnson's witnesses testified that he has a reputation for doing good work.

The disputes about the wood and the trim angles are details which could have been avoided if the parties had reduced their agreement to writing at the beginning, or altered the oral agreement in writing pursuant to MCA § 28-2-1601 ("Alteration of oral

agreement by parties"). The evidence shows an oral agreement between the parties for the simple exchange of services, which this Court may enforce without the need to resolve the parties' disputes regarding wood choices and trim angles. Greg argued that he wanted Johnson to install Purple Heart wood, but in the end he settled for mahogany.

Additional contested details include Johnson's supply of tile and grout, for which he billed Morans, and the unfinished kitchen floor and counter, shower, tub and knee wall. With respect to all of these details, in the absence of a written agreement, the Court interprets the contract according to the law and usage of the place where it is to be performed or made. MCA § 28-3-102. Johnson testified that he believed he had the discretion to use his leftover wood and other materials on Morans' cabin, provided he made it look like the work in his own house which Greg had seen and liked. Greg did not believe Johnson's travel expenses because of lack of receipts, but he knew Johnson was based at Seeley Lake which is not close to Georgetown Lake. In the absence of a written agreement to the contrary, the Court finds insufficient evidence to penalize Johnson for his choice of materials or other expenses on his invoice.

As for the unfinished condition of Johnson's work,

> A "usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a trade code or similar record, the interpretation of the record is a question of law.

MCA § 30-1-205(3); *See Carl Weissman & Sons, Inc. v. Pepper*, 480 F.Supp. 1364, 1368

(D. Mont. 1979).

MCA § 30-1-205(4) provides in pertinent part that a usage of trade "in the vocation or trade in which [the parties] are engaged or of which they are or should be aware is relevant to ascertaining the meaning of the parties' agreement and may supplement or qualify the terms of the agreement . . . ."

Both sides' evidence shows that Johnson's work at Morans' cabin was not complete. However, Johnson and Josh Green each testified that the practice in the trade is for a contractor to be given a chance to address the problems raised by a dissatisfied customer. No evidence exists in the record to the contrary. Johnson could have addressed Morans' complaints, but Greg became livid and ordered Johnson to stay away from the cabin without written permission. The evidence shows that Johnson was not given the opportunity, which the usage of trade evidence shows is regularly observed in the trade, to cure Morans's complaints. As a result of Morans' failure to observe the usage of trade, the Court declines to penalize Johnson for the unfinished or substandard condition of his work which he was not given the opportunity to correct.

What remains is simple arithmetic. Debtor does not dispute that Morans provided him or his business with vehicle repairs valued in the sum of $11,942.76. The Court finds that Johnson's invoice for the work he performed at Morans' cabin is in the sum of $11,682.32. The difference and the amount of Morans' allowed claim pursuant to the undisputed oral agreement between the parties is the amount of $260.44.

17

**IT IS ORDERED** a separate Order shall be entered sustaining Debtor's Objection to amended Proof of Claim No. 2 filed by Morans, and allowing Morans an unsecured nonpriority claim in the amount of $260.44.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge